# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

IN RE :

APPLICATION UNDER 28 U.S.C. § 1782 TO
TAKE DISCOVERY FROM BROOKFIELD
ASSET MANAGEMENT LTD., CAHILL
GORDON & REINDEL LLP, KPMG LLP,
THE BANK OF NOVA SCOTIA, SCOTIA
CAPITAL (USA) INC., SCOTIA HOLDINGS
(USA) LLC, ARUP LATIN AMERICA S.A.,
ARUP AMERICAS, INC., CITIBANK, N.A.,
WELLS FARGO, N.A., JPMORGAN CHASE
& CO., THE CLEARING HOUSE PAYMENTS
COMPANY L.L.C., AND THE FEDERAL
RESERVE BANK OF NEW YORK

Case No. 1:25-mc-00278

## MEMORANDUM OF LAW IN SUPPORT OF APPLICATION UNDER 28 U.S.C. § 1782 AUTHORIZING APPLICANT TO CONDUCT DISCOVERY IN THIS DISTRICT FOR USE IN FOREIGN PROCEEDINGS

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................. ii

**PRELIMINARY STATEMENT** ........................................................................................ 1

**FACTUAL BACKGROUND** ............................................................................................. 2

   I.   Overview of the Peruvian Criminal Justice System ....................................................... 2

   II.   The Foreign Proceedings ............................................................................................... 3

      A.    The Brookfield Money Laundering Investigation (No. 029-2023) ........................... 4

      B.    The Villarán Bribery Case (No. 30-2017) ............................................................... 5

      C.    The Rutas Money Laundering Case (No. 31-2017) .................................................. 6

      D.    The Concession Contract Corruption Case (No. 448-2017) ..................................... 7

   III.  The Discovery Sought for Use in the Foreign Proceedings................................................. 7

      A.    Discovery Concerning Brookfield's Acquisition and Operation of Rutas ................ 7

      B.    Discovery Concerning Corrupt MML Officials and the Concession Contract.......... 8

**ARGUMENT** .................................................................................................................. 10

   I.   The Application Meets Each of the § 1782 Statutory Requirements................................. 10

      A.    The Discovery Subjects Reside or Are Found in the Southern District of New York
.................................................................................................................................... 10

      B.    Applicant Is an "Interested Person" in the Foreign Proceedings as an "Aggrieved
Party" and/or "Civil Actor" ..................................................................................... 12

      C.    The Requested Discovery Is Sought for Use in the Foreign Proceedings ................ 14

   II.  Each of the Discretionary Factors Weighs Strongly in Favor of Granting the Application
...................................................................................................................................16

      A.    The Discovery Subjects Are Not Participating in the Foreign Proceedings............. 17

      B.    The Nature of the Court, the Character of the Proceeding, and the Receptivity of the
Court Support Granting the Discovery Requested ................................................... 19

      C.    Applicant Does Not Seek to Circumvent Proof-Gathering Restrictions or Other
Policies....................................................................................................................... 20

      D.    The Requested Discovery Is Narrowly Tailored, and Is Not Unduly Intrusive or
Burdensome ............................................................................................................... 21

**CONCLUSION** ............................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*Application of Malev Hungarian Airlines*, 964 F.2d 97 (2d Cir. 1992).........................................17

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012)................................................................................17, 19

*Bravo Express Corp. v. Total Petrochemicals & Refining U.S.*,
   613 Fed. App'x 319 (5th Cir. 2015)...............................................................................16

*Campos-Alvarez v. Newmont Mining Corp.*,
   2015 WL 1228262 (D. Colo. Mar. 16, 2015).................................................................20

*Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*,
   798 F.3d 113 (2d Cir. 2015)..........................................................................................13

*Consorcio Minero S.A. v. Doe Run Res. Corp.*,
   2011 WL 4550200 (E.D. Mo. Sept. 30, 2011).............................................................20

*Euromepa S.A. v. R. Esmerian, Inc.*,
   51 F.3d 1095 (2d Cir. 1995).....................................................................................17, 19

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021)......................................................................................................11

*In re Aguila Energia e Participacoes Ltda.*,
   2023 WL 7001445 (S.D.N.Y. Aug. 22, 2023).............................................................18

*In re Application of Chevron Corp.*,
   709 F. Supp. 2d 283 (S.D.N.Y. 2010)...........................................................................18

*In re Application of Grupo Qumma*,
   2005 WL 937486 (S.D.N.Y. Apr. 22, 2005)................................................................17

*In re Application of Hill*,
   2007 WL 1226141 (S.D.N.Y. Apr. 23, 2007)..............................................................20

*In re Application of Inversiones y Gasolinera Petroleos Venezuela S. de R.L.*,
   2011 WL 181311 (S.D. Fla. Jan. 19, 2011).................................................................22

*In re Application of Michael Wilson & Partners*,
   2009 WL 1193874 (D. Colo. Apr. 30, 2009)...............................................................21

*In re Application Pursuant to 28 U.S.C. Section 1782 for an Ord. Permitting Christen Sveaas to Take Discovery from Dominique Levy, L & M Galleries & other non-participants for use in*

*Actions Pending in the Norway*,
    249 F.R.D. 96 (S.D.N.Y. 2008) ............................................................. 18

*In re B&C KB Holding GmbH*,
    2023 WL 1777326 (S.D.N.Y. Feb. 6, 2023) ............................................. 14

*In re Cooperatieve Rabobank*,
    No. 1:20-MC-89 (S.D.N.Y. Feb. 18, 2020 ............................................... 22

*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019) ........................................................... 11, 12

*In re Evenstar Master Fund SPC for & on behalf of Evenstar Master Sub-Fund I Segregated Porftfolio*,
    2021 WL 3829991 (S.D.N.Y. Aug. 27, 2021) ...................................... 18, 22

*In re Furstenberg Fin. SAS*,
    2018 WL 3392882 (S.D.N.Y. July 12, 2018) ........................................... 16

*In re Golden Meditech Holdings Ltd.*, 2024 WL 1349135 (S.D.N.Y. Mar. 29, 2024) ................ 11

*In re Iraq Telecom Ltd.*,
    2023 WL 2402873 (E.D. Pa. Mar. 8, 2023) ............................................ 16

*In re Kuwait Ports Auth.*,
    2021 WL 5909999 (S.D.N.Y. Dec. 13, 2021)............................................ 12

*In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*,
    539 F.2d 1216 (9th Cir. 1976) ............................................................. 22

*In re Litasco SA*,
    2023 WL 8700957 (S.D.N.Y. Dec. 15, 2023)............................................ 11

*In re Mangouras*,
    2017 WL 4990655 (S.D.N.Y. Oct. 30, 2017) ........................................... 20

*In re Mutabagani*,
    2023 WL 2811621 (S.D.N.Y. Apr. 6, 2023)............................................ 16

*In re owl Shipping, LLC*,
    2014 WL 5320192 (D. N.J. 2014)........................................................ 19

*In re Pishevar*,
    439 F. Supp. 3d 290 (S.D.N.Y. 2020) ................................................... 16

*In re Vinmar Overseas, Ltd.*,

2020 WL 4676652 (S.D.N.Y. Aug. 12, 2020) .................................................. 12, 18

*In re Zarzur,*
2024 WL 81517 (S.D.N.Y. Jan. 8, 2024) ...................................................... 12

*In The Matter of the Ex Parte Application of Andrew Reginald Yeo and Gess Michael Rambaldi,*
1:18-MC-483 (S.D.N.Y. 2018) ............................................................. 18

*Intel Corp. v. Advanced Micro Devices, Inc.,*
542 U.S. 241 (2004) ............................................................. passim

*Mees v. Buiter,*
793 F.3d 291 (2d Cir. 2015) .................................................... 15, 21

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf,*
2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ................................... 20

*ZF Auto. US, Inc. v. Luxshare, Ltd.,*
596 U.S. 619 (2022) ............................................................. 15

**Statutes**

28 U.S.C § 1782 .................................................................. 10

**Other Authorities**

*New Evidence Suggests FBI Agent Involved With Crossfire Hurricane Was Foreign Spy,*
The Federalist (June 12, 2025) ................................................... 9

*Retired FBI Special Agent in Charge Sentenced for Concealing Information from the FBI,*
U.S. Dep't Justice Archives (Feb. 16, 2024) .................................... 9

**Rules**

Fed. R. Civ. P. 26 ................................................................. 21

## PRELIMINARY STATEMENT[1]

The State of Peru ("Applicant"), through the Ad Hoc Public Attorney for the Lava Jato case ("Ad Hoc Public Attorney"), seeks discovery under 28 U.S.C. § 1782 for use in four criminal proceedings in Peru: Case No. 30-2017 ("Villarán Bribery Case"), Case No. 31-2017 (the "Rutas Money Laundering Case"), Case No. 448-2017 ("Concession Contract Corruption Case"), and Case No. 029-2023 ("Brookfield Group Money Laundering Investigation") (together, the "Foreign Proceedings").  The Ad Hoc Public Attorney is the government authority designated to represent the legal interests of the Peruvian State in each of these matters.

This application satisfies all statutory requirements.  The discovery targets reside or are found in this District through headquarters or forum-related business activities.  The evidence sought—including due diligence documents and financial records—is for use in foreign proceedings before a Peruvian tribunal or a proceeding within reasonable contemplation.  And as an aggrieved party and/or civil actor under Peruvian law in these proceedings, the Applicant qualifies as an "interested party" under § 1782.

The discretionary factors also support granting the application.  The discovery targets are not participants in the foreign proceedings; Peruvian courts have welcomed foreign judicial assistance in similar matters; and the requests are specific, proportional, and tailored to avoid undue burden.  The Application should be granted.

---

[1] This Application relates to *In re Application to the Metropolitan Municipality of Lima*, No. 24-MC-533 (S.D.N.Y.), in which the Metropolitan Municipality of Lima also sought discovery on behalf of Applicant.  Although MML's pending Motion for Reconsideration (Dkt. 74) explains the errors in the Court's order granting the motions to vacate and quash subpoenas (Dkt. 72), Applicant nonetheless files the instant Application to preserve its own rights.  This Application cites briefing, declarations, exhibits, and the Court's order from that proceeding in the interest of judicial economy since the need for the requested relief has already been thoroughly briefed.  Certain documents are incorporated by reference as supporting evidence, but the legal positions of Brookfield, Scotiabank or Cahill are not adopted unless expressly stated.  All docket citations ("Dkt.") refer to the docket in the related proceeding unless otherwise noted.

## FACTUAL BACKGROUND

I.    **Overview of the Peruvian Criminal Justice System**

Peruvian criminal proceedings involve several actors with distinct legal roles.  The Public Ministry (*Ministerio Público*)—headed by the Prosecutor's Office (*Fiscalía*)—is an autonomous body established under Articles 158 and 159 of the Peruvian Constitution.  Declaration of Nory Marilyn Vega Caro ("Peru Declaration") ¶ 7; Declaration of Scott Curtis Nielson ("Nielson Declaration") Ex. 1.  The Prosecutor's Office initiates investigations and prosecutes crimes on behalf of society, not any specific individual or institution, and represents the public interest in enforcing criminal law impartially, regardless of whether the harmed party is private or the State. *Id.*

Separately, the Office of Attorney General of the State (*Procuraduría General del Estado*)—created by Legislative Decree No. 1326—defends the legal and patrimonial interests of the State through its public attorneys (*procuradores*).  Peru Decl. ¶ 8; Caro Ex. 3 (Dkt. 42-3) at 2, 4 (Articles 12, 24).  Article 25(5) authorizes the State to appoint an "Ad Hoc" public attorney to "assume the legal defense of the State in special and transcendent cases."  Peru Decl. ¶ 8; Caro Ex. 3 (Dkt. 42-3) at 4.  On February 6, 2017, the State appointed the Ad Hoc Public Attorney to represent its interests in corruption, money laundering, and related proceedings involving Odebrecht S.A. ("Odebrecht").  Peru Decl. ¶ 8; Carrasco Ex. 2 (Dkt. 39-2) at 3, 5 (Supreme Resolution No. 029-2017-JUS).  In these proceedings, the Ad Hoc Public Attorney participates as an aggrieved party and/or civil actor, not as a prosecutor.  Peru Decl. ¶ 8.

Under Peruvian law, an aggrieved party is "[a]nyone who is directly offended by the crime or harmed by the consequences thereof."  Peru Decl. ¶ 9; Carrasco Ex. 1 (Dkt. 65-1) at 4 (Article 94, Peruvian Code of Criminal Procedure ("CCP")).  An aggrieved party has the right to be informed about the progress of the investigation; the right to challenge a decision to discontinue

2

the investigation; the right to challenge an acquittal; the right to submit evidence; the right to request that the prosecutor gather specific evidence or take certain actions; the right to advocate for their interests by highlighting the importance of certain evidence; and the right to participate in hearings or proceedings related to the investigation, in accordance with Peruvian legislation. Peru Decl. ¶ 9; Caro Ex. 2 (Dkt. 42-2) at 6 (Article 337(4), CCP); Carrasco Ex. 1 (Dkt. 65-1) at 4, 7–8 (Articles 95, 334, CCP); Order (Dkt. 72) at 15 n.5.

A civil actor similarly enjoys these participation rights and others granted by law in that capacity, with one key distinction: the civil actor may seek civil reparation (i.e., damages).  Peru Decl. ¶ 10; Velarde Ex. 1 (Dkt. 35-1) at 5 (Articles 98, 105, CCP).  The civil actor's rights include the right to "cooperat[e] in clarifying the criminal act and identifying its perpetrator(s)" of the crime; the right to seek the nullity of procedural actions; the right to offer evidence; the right to participate in the investigation; the right to participate in the oral trial, the right to file appeals; and the right to intervene in proceedings involving restrictive measures of rights, in accordance with Peruvian legislation.  Peru Decl. ¶ 10; Velarde Ex. 1 (Dkt. 35-1) at 6 (Articles 104, 105, CCP).

As part of its authority to defend the interests of the Peruvian State, on June 7, 2025, the Office of Attorney General of the State issued a resolution memorializing the collegial defense between the Deputy Public Attorney for the Metropolitan Municipality of Lima ("MML") and the Ad Hoc Public Attorney in seeking § 1782 discovery for use in the four Foreign Proceedings.  Peru Decl. ¶ 5; Nielson Decl. Ex. 2.  Applicant may submit evidence in all four proceedings, as there is no procedural bar to introducing evidence at their current stages.  Order (Dkt. 72) at 26–27.

## II.    The Foreign Proceedings

The discovery sought in this Application is for use in four related criminal proceedings in Peru, which arise from a concession contract awarded to Rutas de Lima S.A.C. ("Rutas") to operate

toll roads in Lima, Peru.  MML Appl. (Dkt. 3) at 1–2, 14–17.  The contract was secured through a bribery scheme involving former municipal officials and Odebrecht, a Brazilian construction conglomerate that has admitted to corruption in Peru.  *Id.* at 1–2.  The Foreign Proceedings concern the corrupt award and amendment of that contract, illicit payments tied to its financing, and Brookfield's subsequent acquisition of the concession in 2016, which may have been used to shield Odebrecht's assets and preserve its control.  *Id.* at 1–12.

### A.  The Brookfield Group Money Laundering Investigation (No. 029-2023)

The Prosecutor's Office initiated a preliminary investigation against those that result to be responsible for the crime of money laundering, as it relates to BIF III Peru Transportation I S.A.C.'s ("BIF III") acquisition of a 57% stake in Rutas from Odebrecht Latinvest Peru S.A.C in 2016.[2]  Peru Decl. ¶ 15.  The investigation was initiated after MML filed a complaint.  *Id.*  The Brookfield Group Money Laundering Investigation is reviewing the circumstances of the acquisition, including whether Brookfield violated its own ethical codes or anti-corruption policies, and whether Odebrecht has continued to exercise control over Rutas after selling its interest.  *Id.*; Order (Dkt. 72) at 5; MML Appl. (Dkt. 3) at 15–16.  This proceeding is currently in the preliminary investigation stage.  *Id.*  On February 16, 2024, the Prosecutor's Office extended the deadline for the investigation to August 28, 2026.  Carrasco Decl. (Dkt. 39) at ¶ 17.  Brookfield entities unsuccessfully questioned the extension before a Preparatory Investigation Judge.  Peru Decl. ¶ 15.  Brookfield did not appeal the decision.  *Id.*

On February 12, 2025, the prosecutor named BIF III, a Brookfield entity involved in Brookfield's acquisition of Rutas, as "the legal entity under investigation" in the Brookfield Group

---

[2] The legal entity originally named "Vías Nuevas de Lima" was incorporated by public deed on October 13, 2012, and its name was later changed to "Rutas de Lima" by public deed dated November 28, 2012.  The Concession Contract was signed on January 9, 2013.  Additionally, Brookfield Infrastructure Group Peru S.A.C. was incorporated on November 10, 2014.

Money Laundering Investigation.  Peru Decl. ¶ 15; Nielson Decl. Ex. 3 at 8.  The prosecutor is investigating "the alleged commission of the crime of money laundering" by establishing the supporting evidence and legal theories, and has taken steps to advance the case, including document collection and witness interviews.  Nielson Decl. Ex. 3 at 4–8.  More than 32 witness interviews have been scheduled, many of which have already been completed.  *Id.* at 8–13. Applicant is an aggrieved party in this case.  Peru Decl. ¶ 15; *see also* Carrasco II Decl. (Dkt. 65) ¶ 14 ("[T]he Peruvian State is considered the aggrieved or prejudiced party with respect to each and every one of the crimes alleged in the Criminal Proceedings.").

### B.  The Villarán Bribery Case (No. 30-2017)

On November 24, 2017, the Prosecutor's Office initiated an investigation for bribery-related crimes and money laundering against the former Mayor of Lima Susana Villarán and other MML officials.  Peru Decl. ¶ 12; Order (Dkt. 72) at 5.  officials.  Villarán and her associates are accused of soliciting and receiving approximately US $4 million in improper payments from Odebrecht for the purpose of illegally financing the "No Recall" and re-election campaigns, acts that would constitute money laundering.  Peru Decl. ¶ 12.  These payments would have been made to benefit Odebrecht in the process of awarding and executing the contract for the the Vías Nuevas de Lima project, the concession contract signed with MML to operate a network of toll roads in Lima.  *Id.*  The accused are Villarán, José Miguel Castro Gutiérrez, Domingo Arzubialde Elorrieta, Maria Julia Mendez Vega, Daniela Maguiña Ugarte, and José Adelmahiro Pinheiro Filho.  Order (Dkt. 72) at 5; Carrasco I Decl. (Dkt. 39) ¶ 5.  Rutas and Constructora Norberto Odebrecht have been declared by a judge to be potentially civilly liable third parties in this proceeding.  Peru Decl. ¶ 12; Order (Dkt. 72) at 5; Carasco I Decl. ¶¶ 5, 19.

The Villarán Bribery Case is in the accusation stage and is proceeding to trial.  Order (Dkt.

72) at 6; Carrasco I Decl. (Dkt. 39) ¶¶ 21–22; MML Appl. (Dkt. 3) at 16.  The charges are criminal association, collusion, bribery, incompatible negotiation, crimes against public faith, and money laundering.  Order (Dkt. 72) at 6; MML Appl. (Dkt. 3) at 19; Carrasco I Decl. (Dkt. 39) ¶¶ 5, 22. Trial has been set for September 23, 2025.  Peru Decl. ¶ 12; Nielson Decl. Ex. 4.  Applicant is an aggrieved party and a civil actor in this case.  *See* Peru Decl. ¶ 12; Nielson Decl. Ex. 5; *see also* Carrasco II Decl. (Dkt. 65) ¶ 14.

### C.  The Rutas Money Laundering Case (No. 31-2017)

On December 7, 2017, the Prosecutor's Office initiated an investigation of former Peruvian president Pedro Pablo Kuczynski and several others for money laundering related to Rutas' payment to Rutas' purported financial advisor, Gerardo Sepulveda, of an illegal "success fee" of US $3.5 million upon the financial closing of the Concession Contract.  Peru Decl. ¶ 13; Order (Dkt. 72) at 6; Carrasco I Decl. (Dkt. 39) ¶¶ 5, 19.  The accused are Kuczynski, Sepulveda, and Gloria Jesus Kisic Wagner.  Peru Dec. ¶ 13; Order (Dkt. 72) at 6.  José Luis Bernaola Nufflo remains in the case for purposes of potential civil liability.  Peru Decl. ¶ 13.  In addition, Westfield Capital Limited, Inc., First Capital Inversiones Asesoría Limitada, Dorado Asset Management, and Latin America Enterprise Fund Managers, LLC are named as accused entities.  *Id.*  Westfield Capital Limited, Inc. and First Capital Inversiones Asesoría Limitada are included in the case as civilly liable third parties. The Rutas Money Laundering case is in the accusation stage in the Seventh Court of National Preparatory Investigation of the National Superior Court of Specialized Criminal Justice.  Peru Decl. ¶ 13; Order (Dkt. 72) at 6.  The charge is money laundering.  Peru Decl. ¶ 13; Order (Dkt. 72) at 6; Carrasco I Decl. (Dkt. 39) ¶ 5.  Applicant is an aggrieved party and a civil actor in this case.  Peru Decl. ¶ 13; Nielson Decl. Ex. 6; *see also* Carrasco II Decl. (Dkt. 65) ¶ 14.

### D.  The Concession Contract Corruption Case (No. 448-2017)

A few years ago, the Prosecutor's Office initiated an investigation relating to the Concession Contract between Rutas and MML, covering the potential overvaluation of construction works, unjustified modifications to mandatory projects, improper toll rate increases, and the implementation of compensation mechanisms.  Peru Decl. ¶ 14; Order (Dkt. 72) at 6.

The Concession Contract Corruption Case is in the preparatory investigation stage in the Eighth Court of National Preparatory Investigation of the National Superior Court of Specialized Criminal Justice.  Peru Decl. ¶ 14; Order (Dkt. 72) at 7; MML Appl. (Dkt. 3) at 17.  The charges are collusion, criminal association, and, alternatively, incompatible negotiation.  *Id.*; Carrasco I Decl. (Dkt. 39) ¶ 29.  On December 19, 2024, the case was expanded to include the investigation of five Rutas officials—Raúl Ribeiro Pereira Neto, Felipe Ferreira Neves, Guilherme Borges de Queiroz, Marcelo Pires Ferreira Prado, and Juan Carlos Velarde Chávez—as alleged accomplices to the crime of Aggravated Collusion harming the Peruvian State.  Peru Decl. ¶ 14; Nielson Decl. Ex. 7.  Applicant is an aggrieved party and a civil actor in this case.  Peru Decl. ¶ 14; Nielson Decl. Ex. 8; *see also* Carrasco II Decl. (Dkt. 65) ¶ 14.

## III.    The Discovery Sought for Use in the Foreign Proceedings

Applicant seeks discovery from individuals and entities that likely possess documents and other information relevant to the Foreign Proceedings (the "Discovery Subjects").[3]  *See* MML Appl. (Dkt. 3) at 2–26 (discussing factual background and relevance of discovery).

### A.  Discovery Concerning Brookfield's Acquisition and Operation of Rutas

Applicant seeks discovery from entities believed to have been involved in Brookfield's

---

[3] The Applicant has not set a return date or deposition date in the subpoenas, given that the Court's timeline for ruling on these discovery requests is uncertain.  Should the Court grant the Applicant's application, the Applicant will set reasonable dates in the subpoenas.

acquisition of Odebrecht's majority stake in Rutas; Brookfield's scheme to shield Odebrecht's assets through a sham transaction; and/or Brookfield's operation of the Concession Contract. *See* Nielson Decl. Exs. A–K. They include Brookfield Asset Management Ltd., Cahill Gordon & Reindel LLP ("Cahill"), KPMG LLP ("KPMG"), The Bank of Nova Scotia, Scotia Capital (USA) Inc., Scotia Holdings (USA) LLC, (together, "Scotiabank"), Arup Latin America S.A., Arup Americas, Inc. (together, "Arup"), and Citibank, N.A. ("Citibank"). *See id*; MML Appl. (Dkt. 3) at 9–14 (discussing Brookfield's acquisition of Rutas, the focus on corruption due diligence, and the roles the entities played).

These materials likely contain corruption evidence uncovered during the due diligence, further supporting that the Concession Contract was rooted in corruption—a key issue in all the Foreign Proceedings. Additionally, the limited scope of the corruption due diligence may reflect deliberate avoidance of red flags and that the acquisition was a sham to shield Odebrecht's assets or launder funds—issues central to the Brookfield Group Money Laundering Investigation. *See also* MML Appl. (Dkt. 3) at 17–22 (discussing relevance).

Additionally, Applicant seeks a 30(b)(6) deposition from Brookfield Asset Management Ltd., the corporate successor to Brookfield's former asset management business. Nielson Decl. Ex. B; MML Appl. (Dkt. 3) at 20–21 & n.19. That business managed Brookfield's infrastructure platform at the time of the 2016 acquisition of Rutas, and Brookfield Asset Management Ltd. now performs that same management function. MML App. (Dkt. 3) at 20–21 & n.19.

### B. Discovery Concerning Corrupt MML Officials and the Concession Contract

Applicant seeks discovery of financial transactions and other records exposing the corruption of former public officials and the Concession Contract. *See* Nielson Decl. Exs. A–K. This includes wire transfer records, account opening documents, account statements, internal bank

communications, correspondence with account holders, transaction logs, and beneficial ownership information.  *Id.*  These records can reveal illicit payments, irregular transactions, coordinated activity among involved parties, efforts to conceal funds, transfers to public officials, and conflicts of interest, and help establish the elements of aggravated collusion, criminal association, money laundering, bribery, and incompatible negotiation under Peruvian law.  MML Appl. (Dkt. 3) at 22–26 (discussing relevance).

The discovery subjects include the Clearing House Payments Company L.L.C. ("CHIPS"), the Federal Reserve Bank of New York ("Fed-NY"), Wells Fargo, and JPMorgan Chase & Co.  *See* MML Appl. (Dkt. 3) at 2–17 (discussing factual background).  The discovery requested from CHIPS and Fed-NY focuses on transactions involving individuals and entities accused in the Foreign Proceedings or otherwise believed to be involved in the corruption,[4] including former public officials involved in facilitating the award and amendments to the Concession Contract,[5] Odebrecht executives who remained at Rutas after Brookfield's acquisition,[6] and Rutas's financial

---

[4] *See* MML Appl. (Dkt. 3) at 24 nn.26–27 for a list of individuals and entities that are being investigated as part of the Foreign Proceedings or are otherwise relevant to the four Foreign Proceedings.  Also, Brookfield's former head of global security, Charles McGonigal, is currently serving a multiyear prison sentence in U.S. federal prison after being sentenced for money laundering, sanctions evasion, and illicit receipt of cash from foreign intelligence officials. Recent U.S. and Peruvian media reports that McGonigal was detained and interrogated after returning from a business trip in South America for Brookfield.  These recently revealed factual circumstances make Brookfield's former global security chief a person of interest in the Foreign Proceedings, and Applicant seeks to obtain records regarding McGonigal in this application.  *See Retired FBI Special Agent in Charge Sentenced for Concealing Information from the FBI*, U.S. Dep't Justice Archives (Feb. 16, 2024), https://www.justice.gov/archives/opa/pr/retired-fbi-special-agent-charge-sentenced-concealing-information-fbi; J. Michael Waller, *New Evidence Suggests FBI Agent Involved With Crossfire Hurricane Was Foreign Spy*, The Federalist (June 12, 2025), https://thefederalist.com/2025/06/12/new-evidence-suggests-fbi-agent-involved-with-crossfire-hurricane-was-foreign-spy/.

[5] The public officials are Elizabeth Vilca Quispe (former Deputy Manager of Management of Contracts with Private Participation), Guillermo Segundo Gonzales Criollo (former Manager of Contract Supervision), Jaime Villafuerte Quiroz (former Manager of the Management of Private Investment Promotion (GPIP)), José Luis Bernaola Ñuflo (former Deputy Manager of Public Works), Luis Castañeda Lossio (former Mayor of Lima), and Raúl Javier Bueno Cano (former Contracts Coordinator).

[6] The Odebrecht-linked individuals are Jorge Henrique Simoes Barata, Felipe Ferreira Neves, Raúl Pereira Neto, Bruno Falcao De Seixas Sampaio, Luiz Martins Catharino Gordilho Neto, and Oscar Eduardo Salazar Chiappe.

advisor and affiliates who received a "success fee" in connection with the Rutas financing.[7]  *See* Nielson Decl. Exs. J–K.  These documents are relevant across all the Foreign Proceedings.

The requests to Wells Fargo and JPMorgan Chase & Co. focus on U.S. accounts through which Odebrecht paid the U.S. $3.5 million "success fee" to Rutas's purported financial advisor after the Rutas transaction closed, as well as related accounts tied to the Rutas Money Laundering Case.  *See* Nielson Decl. Exs. H–I.  Information about these accounts and related transactions is also important to the Villarán Bribery Case and the Concession Contract Corruption Case, which involve the same corrupt scheme.

## ARGUMENT

### I.    The Application Meets Each of the § 1782 Statutory Requirements

Section 1782 allows federal district courts to authorize litigants to obtain evidence for use in foreign proceedings and provides that:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C § 1782.  Accordingly, an applicant seeking discovery under Section 1782 must show that: (1) the party from whom the discovery is sought resides or is found in the district where the application is made; (2) the discovery is intended "for use" in a foreign proceeding; and (3) the application is made by an "interested person" in the foreign proceeding.  *Id.*  This Application meets all the statutory requirements.

### A.  The Discovery Subjects Reside or Are Found in the Southern District of New York

---

[7] Rutas's financial advisors and related individual entities are Sepúlveda, Kuczynski, Comitre, Barbara, Latam Fund, First Capital, and Westfield Capital.

"[P]hysical presence" within a district is not necessary to satisfy the "resides or is found" requirement of Section 1782. *In re del Valle Ruiz*, 939 F.3d 520, 534 (2d Cir. 2019) (interpreting "found" broadly and rejecting any "physical presence" requirement). Instead, an entity's forum contacts must be sufficient to subject it to the district court's personal jurisdiction. *Id.* ("§ 1782's 'resides or is found' language extends its reach to the limits of personal jurisdiction consistent with due process."). "The constitutional limits of personal jurisdiction allow for a showing of either general or specific jurisdiction over each respondent." *In re Golden Meditech Holdings Ltd.*, No. 24 MISC. 24 (DEH), 2024 WL 1349135, at *2 (S.D.N.Y. Mar. 29, 2024).

Courts have general jurisdiction "over corporations that are either incorporated in New York or have their principal place of business here." *In re Litasco SA*, No. 23-MC-354 (AS), 2023 WL 8700957, at *1 (S.D.N.Y. Dec. 15, 2023) (cleaned up). The activity at issue "need not relate to the forum State or the defendant's activity there; they may concern events and conduct anywhere in the world." *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 358 (2021).

Additionally, courts have specific jurisdiction over corporations that have taken "some act by which [they] purposefully avail[ed] [themselves] of the privilege of conducting activities within" New York. *Id.* at 359. In other words, the activity at issue "must arise out of or relate to the corporation's contacts with the forum. *Id.* at 352.

The Court has general jurisdiction over CHIPS, Fed-NY, Citibank, Brookfield Asset Management Ltd., JPMorgan Chase & Co, and Cahill because they are headquartered in this District. Nielson Decl. Exs. 9–11 (CHIPS headquartered at 1114 Avenue of the Americas, 17th Floor, New York, NY 10036); Nielson Decl. Ex. 12 (Fed-NY headquartered at 33 Liberty Street New York, NY 10045); MML Ex. 62 (Dkt. 4-88) at 1; MML Exs. 62–63 (Dkts. 4-88 & 4-89)

11

(Citibank headquartered at 388 Greenwich Street New York, NY 10013); MML Ex. 64 (Dkt. 4-90) (Brookfield Asset Management Ltd. headquartered at 250 Vesey Street, 15th Floor, New York, NY 10281-0221); *id.* ("[Brookfield Asset Management Ltd.] BAM has now changed its head office to New York."); Nielson Decl. Ex. 13 (JPMorgan Chase & Co headquartered at 383 Madison Avenue, New York, NY 10017); MML Exs. 65–67 (Dkts. 4-91–4-93) (Cahill headquartered at 32 Old Slip, New York, NY 10005. As a result, they "reside" or are "found" in this District. *See In re Kuwait Ports Auth.*, No. 1:20-MC-00046-ALC, 2021 WL 5909999, at *6 & n.8 (S.D.N.Y. Dec. 13, 2021) (concluding that the court has general jurisdiction over Citibank, N.A. because it is headquartered in New York, New York); *In re Zarzur*, No. 22 MISC. 348 (AT), 2024 WL 81517, at *1 (S.D.N.Y. Jan. 8, 2024) (concluding that CHIPS and Fed-NY "reside in this District"); *In re Vinmar Overseas, Ltd.*, No. 20-MC-277 (RA), 2020 WL 4676652, at *1 (S.D.N.Y. Aug. 12, 2020) (concluding that CHIPS resides or is found in this District because it is headquartered in this District).

This Court also has specific jurisdiction over KPMG, Scotiabank, Arup, and Wells Fargo because the discovery sought "arise[s] out of or relate[s] to" the entities' contacts with this District. *In re del Valle Ruiz*, 939 F.3d at 530 (discussing standard in the context of § 1782). The discovery sought from Scotiabank relates to its financial services in this District; the discovery sought from KPMG relates to its advisory business in this District; the discovery sought from Arup relates to Arup's due diligence, risk assessment, and transaction support business in this District; and the discovery sought from Wells Fargo relates to its banking operations in this District. MML Appl. (Dkt. 3) at 30–32; MML Ex. 38 (Dkt. 4-64) ¶¶ 25, 39, 42; MML Exs. 26, 59, 65, 70–76 (Dkts. 4-48, 4-85, 4-91, 4-96–4-102). They are therefore "found" in this District.

## B. Applicant Is an "Interested Person" in the Foreign Proceedings as an "Aggrieved Party" and/or "Civil Actor"

An "interested person" is "intended to include not only litigants before foreign or international tribunals, but also foreign and international officials as well as any other person whether he be designated by foreign law or international convention *or merely possess a reasonable interest in obtaining the assistance*." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 257 (2004) (citation omitted) (emphasis added). "[A]n established *right* to provide evidence and have the party consider it, … or a recognized relationship, such as that of an agent and principal, … may be sufficient to make an otherwise stranger to the proceeding an 'interested person.'" *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015). Applicant meets this threshold because it has been formally recognized as both an "aggrieved party" and/or "civil actor" in the Foreign Proceedings, each of which provides substantial participation rights.

Applicant—the State of Peru—is designated as an "aggrieved party" in all the Foreign Proceedings. Peru Decl. ¶¶ 12–15; Carrasco II Decl. (Dkt. 65) ¶ 14. Under Peruvian law, and as Brookfield has acknowledged, "the Peruvian State is considered the aggrieved or prejudiced party with respect to each and every one of the crimes alleged in the Criminal Proceedings." Carrasco II Decl. (Dkt. 65) ¶ 14; Carrasco I Decl. (Dkt. 39) ¶¶ 15, 22–24, 31–32. This designation entitles Applicant to a range of rights, including the right to submit evidence, request investigative actions, challenge prosecutorial decisions, and participate in hearings. *See* Peru Decl. ¶ 9; Caro Ex. 2 (Dkt. 42-2) at 6 (Article 337(4), CCP); Carrasco Ex. 1 (Dkt. 65-1) at 4, 7–8 (Articles 95, 334, CCP); *see also* Caro I Decl. (Dkt. 42) ¶ 24 ("[W]hen read in view of Article 377 of the CCP . . . it is clear that in some circumstances an 'aggrieved party' has the capacity to provide evidence in support of the prosecution of the crime."); Order (Dkt. 72) at 15 n.5 ("[I]t appears that such rights [of an

13

aggrieved party] would bring an applicant within the definition of 'interested person' set out in *Intel* and *Certain Funds*.").

Separately, Applicant is a formally recognized "civil actor" in the Villarán Bribery Case, the Rutas Money Laundering Case, and the Concession Contract Corruption Case. Peru Decl. ¶¶ 12–14; Nielson Decl. Exs. 5, 6, & 8. In addition to having the right to submit evidence, as a civil actor, Applicant has the right to pursue civil reparations, seek the nullity of proceedings, intervene in oral proceedings, and assist in clarifying criminal conduct and identifying those responsible. *See* Peru Decl. ¶ 10; Velarde Ex. 1 (Dkt. 35-1) at 6 (Articles 104, 105, CCP); *see also* Carrasco II Decl. (Dkt. 65) ¶ 18 ("[A] civil actor is empowered to present evidence in a criminal proceeding."); Velarde I Decl. (Dkt. 35) ¶ 12 ("[T]he civil actor can also submit evidence, participate in investigations, intervene in the oral trial, file certain appeals and challenge decisions."); Brookfield Reply (Dkt. 62) at 6 ("[T]he only other party-status with such right [to present evidence in the proceeding itself] is the status of civil actor.").

Given these rights and its substantial participation in the Foreign Proceedings, Applicant "possess[es] a reasonable interest in obtaining [judicial] assistance" and therefore qualifies as an "interested person." *Intel*, 542 U.S. at 256.

## C. The Requested Discovery Is Sought for Use in the Foreign Proceedings

The second statutory requirement is that the discovery be "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). Under the plain language of the statute, this includes "criminal investigations conducted before formal accusation." *Id.* "The term 'for use' is afforded a broad interpretation, and the sought-after evidence need not be admissible or even discoverable under the rules of the foreign jurisdiction." *In re B&C KB Holding GmbH*, No. 22-MC-00180 (LAK) (VF), 2023 WL 1777326, at *3 (S.D.N.Y. Feb. 6, 2023) (cleaned up).

Additionally, a foreign proceeding need not be pending or even imminent, so long as it is "within reasonable contemplation." *Intel*, 542 U.S. at 259.

Here, the discovery is for use in the Villarán Bribery Case, the Rutas Money Laundering Case, and the Concession Contract Corruption Case, all of which are pending before the National Courts of Preparatory Investigation and presided over by judges. Peru Decl. ¶¶ 12–14; Order (Dkt. 72) at 24. These criminal courts plainly qualify as a "tribunal" under § 1782, a term that includes "investigating magistrates, administrative . . . tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts." *Intel*, 542 U.S. at 258 (cleaned up); *see also ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 627 (2022) (noting that "tribunal" can mean "court," as in the "seat of a judge"); *id.* at 627–28 (noting that "tribunal" can also "more broadly" "refer to any adjudicatory body"); *Intel*, 542 U.S. at 259 ("Congress amended § 1782(a) to clarify that the statute covers criminal investigations conducted before formal accusation." (cleaned up)).

Moreover, the "for use" requirement is met because Applicant has the right to submit evidence in these three proceedings both as an aggrieved party and a civil actor. Peru Decl. ¶¶ 8–10, 12–15; Order (Dkt. 72) at 27 (noting that the § 1782 application "suffice[s] as to the other three proceedings" with respect to the "for use" requirement).

In addition to these ongoing proceedings, Applicant also seeks discovery for use in the Brookfield Group Money Laundering Investigation, a foreign proceeding "within reasonable contemplation." *Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015). Here, the prosecutor has expressly affirmed that the Brookfield Group Money Laundering Investigation is "intended to bring criminal proceedings." Carrasco Ex. 10 (Dkt. No. 39-10) § 2.1. Further, the prosecutor is investigating "the alleged commission of the crime of money laundering" and has laid out the

15

theories of liability, provided evidence supporting those charges, and prepared to move the case forward, including by conducting witness interviews and obtaining additional documents. *Id.* §§ 3–4; Nielson Decl. Ex. 3 at 4–8.

Courts routinely find similar—and lesser—circumstances sufficient to show that tribunal proceedings are "reasonably contemplated." *See, e.g.*, *In re Pishevar*, 439 F. Supp. 3d 290, 302–03 (S.D.N.Y. 2020); (petitioner's counsel "swor[e] that [petitioner] intend[ed] to file a criminal complaint" and "articulated . . . specific legal theor[ies] on which [he] intends to rely"); *In re Furstenberg Finance SAS*, 2018 WL 3392882, at *4 (S.D.N.Y. July 12, 2018) (same).

Additionally, in a recent action, the prosecutor named BIF III as "the legal entity under investigation" in the Brookfield Group Money Laundering Investigation. Nielson Decl. Ex. 3 at 8. More than 32 witness interviews have been scheduled, many of which have already been completed. *Id.* at 8–13. The prosecutor also said he would collect testimony from Brookfield, Odebrecht, and Rutas entities, as well as from municipal officials. *See id.*

The Brookfield Group Money Laundering Investigation is set to conclude August 28, 2026, only 14 months from now. Carrasco Ex. 10 (Dkt. 39-10) § 9.8. When concrete preparatory steps like those underway in the Brookfield Group Money Laundering Investigation are present, courts treat timelines of this length as within "reasonable contemplation" for purposes of § 1782. *See In re Mutabagani*, 2023 WL 2811621, at *3 (S.D.N.Y. Apr. 6, 2023) (five years); *In re Iraq Telecom Ltd.*, 2023 WL 2402873, at *5 (E.D. Pa. Mar. 8, 2023) (two years); *Bravo Express Corp. v. Total Petrochemicals & Refining U.S.*, 613 Fed. App'x 319, 323 & n.6 (5th Cir. 2015) (11 months).

Lastly, the discovery is also "for use" in this investigation because Applicant has the right to submit evidence as an aggrieved party. Peru Decl. ¶ 15.

**II.    Each of the Discretionary Factors Weighs Strongly in Favor of Granting the Application**

Where, as here, an application satisfies the statutory requirements, the district court also considers several discretionary factors in determining whether to grant or deny the application. Those factors are: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the receptivity of the foreign tribunal to federal court assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome.  *See Intel*, 542 U.S. at 264–65.

In weighing those factors, the Court should keep in mind the "twin aims" of the statute: providing an efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.  *See In re Application of Grupo Qumma*, No. M 8-85, 2005 WL 937486, at *4 (S.D.N.Y. Apr. 22, 2005) ("Section 1782's 'underlying policy should generally prompt district courts to provide some form of discovery assistance.'") (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995) ("*Euromepa I*")); *see also Application of Malev Hungarian Airlines*, 964 F.2d 97, 100, 102 (2d Cir. 1992) (noting "twin aims" of statute in reversing district court's denial of discovery under 28 U.S.C. § 1782).  Indeed, "the statute has, over the years, been given increasingly broad applicability." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

### A. The Discovery Subjects Are Not Participating in the Foreign Proceedings

The first discretionary factor weighs in favor of granting the requested discovery because the Discovery Subjects are not participants in the Foreign Proceedings.  *See* Peru Decl. ¶ 6. Because "nonparticipants in the foreign proceeding may be outside of the foreign tribunal's jurisdictional reach," "their evidence, available in the United States, may be unobtainable absent 28 U.S.C. § 1782(a) aid."  *Intel*, 542 U.S. at 264; *see also In re Application Pursuant to 28 U.S.C.*

*Section 1782 for an Ord. Permitting Christen Sveaas to Take Discovery from Dominique Levy, L & M Galleries & other non-participants for use in Actions Pending in the Norway*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (finding a respondent's "status as a non-party in the foreign actions weighs in favor of granting [the] application"); *In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 292 (S.D.N.Y. 2010) (holding that the first discretionary factor favored granting of the application where the respondent was not subject to the jurisdiction of the foreign tribunals).

Here, the Discovery Subjects are not parties to the Foreign Proceedings.  Peru Decl. ¶ 6. Under similar circumstances, courts in this District have granted Section 1782 applications to take discovery from CHIPS, Fed-NY, and other similarly situated discovery subjects.  *See In re Vinmar Overseas, Ltd.*,  2020 WL 4676652, at *2 (granting a 1782 application to take discovery from CHIPS because it was not a party to the foreign proceedings); *see also* Order, *In The Matter of the Ex Parte Application of Andrew Reginald Yeo & Gess Michael Rambaldi*, 1:18-MC-483, Dkt. 6 (S.D.N.Y. 2018) (granting discovery pursuant to Section 1782 from the Federal Reserve Bank). This Court should do the same here.

Although BIF III is involved in the Brookfield Group Money Laundering Case, "this does not alter the analysis because [p]arent companies of non-U.S. participants in foreign proceedings are separate legal entities for purposes of Section 1782 applications."  *In re Aguila Energia e Participacoes Ltda.*, No. CV 22 MISC. 228 (RA) (SLC), 2023 WL 7001445, at *4 (S.D.N.Y. Aug. 22, 2023) (cleaned up)); *see also In re Evenstar Master Fund SPC for & on behalf of Evenstar Master Sub-Fund I Segregated Porftfolio*, No. 20MISC00418CSJCM, 2021 WL 3829991, at *11 (S.D.N.Y. Aug. 27, 2021) ("*Evenstar*") ("[D]iscovery is not necessarily inappropriate under the first *Intel* factor simply because it is sought from a U.S.-based party that is affiliated with the applicant's foreign adversary. . . .  This is because entities who are 'participants' in foreign

proceedings are 'separate legal entities from their subsidiaries and affiliates for the purpose of Section 1782 motions.'").

## B. The Nature of the Court, the Character of the Proceeding, and the Receptivity of the Court Support Granting the Discovery Requested

Applicants enjoy a presumption in favor of this factor. *In re owl Shipping, LLC*, 2014 WL 5320192, at *3 (D. N.J. 2014) ("Parties that apply for discovery under § 1782 enjoy a presumption in favor of foreign tribunal receptivity." (cleaned up)).  In examining receptivity, a U.S. court should limit its inquiry "only [to] authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782," and not engage in "speculative forays into legal territories unfamiliar to federal judges." *Euromepa I*, 51 F.3d at 1100.  This includes forays into whether the evidence is *discoverable* or *admissible* in the foreign proceeding. *Brandi-Dohrn*, 673 F.3d at 81–82 (explaining that "the Supreme Court rejected the so-called foreign-discoverability rule" and concluding that "there is no statutory basis for any admissibility requirement" as well); *Euromepa I*, 51 F.3d at 1101 ("[T]he drafters of section 1782 regarded it as both unnecessary and undesirable to let the propriety of discovery with the aid of an American court depend on discoverability and admissibility under foreign law." (cleaned up)).

Moreover, "authoritative proof" that a foreign tribunal would reject evidence obtained with the aid of Section 1782 is limited to proof "embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Id.* at 1100.  The Peruvian tribunals would be receptive to the documentary evidence sought in this Application.  Peru Decl. ¶ 16.  This is especially true in the context of corruption investigations and criminal misconduct, where uncovering cross-border misconduct often depends on international collaboration. *Id.*

Courts have authorized Section 1782 discovery requests for use in proceedings such as these.  *See, e.g.*, *Campos-Alvarez v. Newmont Mining Corp.*, No. 1:14-CV-00208-REB, 2015 WL 1228262, at *2 (D. Colo. Mar. 16, 2015) (granting, in part, Section 1782 application for discovery for use in Peruvian criminal investigation and noting "there is no indication that the Peruvian courts would not be receptive to relevant information gathered from the respondents in this federal district"); *Consorcio Minero S.A. v. Doe Run Res. Corp.*, No. 4:11-MC-583 CEJ, 2011 WL 4550200, at *4 (E.D. Mo. Sept. 30, 2011) (similarly granting Section 1782 application for discovery for use in Peruvian criminal investigation).

## C. Applicant Does Not Seek to Circumvent Proof-Gathering Restrictions or Other Policies

Applicant seeks this discovery in good faith and is not attempting to circumvent the foreign tribunal's proof-gathering restrictions.  Typically, courts weigh the third *Intel* factor against the applicant only where they find that an application is brought in bad faith.  *See In re Application of Hill*, No. 05CV999996, 2007 WL 1226141, at *3 (S.D.N.Y. Apr. 23, 2007) ("Absent any indication of bad faith on [the applicant's] part, the Court is simply unwilling to weigh the request for 28 U.S.C. § 1782 assistance itself as a negative discretionary factor." (internal quotations omitted)); *see also In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006).

Indeed, courts have granted Section 1782 applications even when the discovery sought was unavailable in the foreign jurisdiction or when the applicant has not first tried to obtain the discovery overseas.  *See, e.g.*, *In re Mangouras*, No. 17-MC-172, 2017 WL 4990655, at *6–7 (S.D.N.Y. Oct. 30, 2017) (vacated and remanded on other grounds).  As mentioned previously, Peruvian courts routinely welcome discovery obtained under § 1782, and the courts in the Foreign Proceedings would likely welcome such discovery.  Peru Decl. ¶ 16.

20

Since the Application is brought in good faith and does not seek to circumvent the discovery procedures of the Foreign Proceedings, the third factor also weighs in favor of granting the Application.

## D.  The Requested Discovery Is Narrowly Tailored, and Is Not Unduly Intrusive or Burdensome

Section 1782 provides that discovery taken under the statute is governed by the Federal Rules of Civil Procedure.  28 U.S.C. § 1782(a).  Thus, the Court "should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  *See Mees*, 793 F.3d at 302.  Further, the scope of permissible discovery under Fed. R. Civ. P. 26 provides, in part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense— including the existence, description, nature, custody, condition, and location of any documents." *In re Application of Michael Wilson & Partners*, No. 06-cv-02575-MSK-KMT, 2009 WL 1193874, at *2 (D. Colo. Apr. 30, 2009) (citations omitted).

As described previously, the documents and deposition Applicant requests are relevant and narrowly tailored to the Foreign Proceedings in Peru.  Peru Decl. ¶ 16; Nielson Decl. Exs. A–K. Applicant seeks discovery of Brookfield's due diligence, along with evidence of financial transactions and other information needed to further support the existence of corruption in the Concession Contract.  *Id.*  The temporal scope of the requested discovery narrowly targets specific activities relevant to this case, such as the illegal "success fee" paid for the financial closing of Rutas (2014–2019),[8] Brookfield Infrastructure's acquisition of Rutas and discovery of corruption issues (2012–2016),[9] other entities' involvement in the due diligence in connection with the 2016

---

[8] The success fee was paid in 2014.  MML Ex. 33 (Dkt. 4-59).

[9] In 2016, Brookfield Infrastructure purchased the controlling shares in the company.  MML Ex. 38 (Dkt. 4-64) at

acquisition (2016), Odebrecht's continued control over Rutas after Brookfield Infrastructure's acquisition (2016–present), and wire transfer records for individuals and entities believed to have continued their involvement in the corruption (2017–present).

Additionally, Applicant seeks the types of records that the Discovery Subjects maintain and produce in the regular course of business.[10]  Indeed, courts in this district have previously granted similar requests.  *See, e.g.*, Order, *In re Cooperatieve Rabobank*, No. 1:20-MC-89 (AKH), Dkt. 11 (S.D.N.Y. Feb. 18, 2020) (granting discovery pursuant to Section 1782 from CHIPS); *Evenstar*, 2021 WL 3829991, at *14 (granting Section 1782 application requesting Rule 30(b)(6) depositions and documents).  Additionally, to the extent any Discovery Subject believes a particular request is unduly burdensome or intrusive, the appropriate course is to raise specific objections through the normal discovery process, at which point the request can be narrowed if necessary.  *See In re Application of Inversiones y Gasolinera Petroleos Venezuela S. de R.L.*, No. 08-20378-MC, 2011 WL 181311, at *13 (S.D. Fla. Jan. 19, 2011) (allowing discovery under § 1782 absent "specific showing" of burdensome or intrusive nature of request by respondent); *cf. In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976) (noting that a subpoenaed party can "raise[] . . . objections and exercise[] . . . their due process rights by motions to quash the subpoena").  Therefore, the final factor also weighs in favor of granting the Application.

## THE APPLICATION IS MADE WITH NOTICE TO THE DISCOVERY SUBJECTS

While Section 1782 applications are typically filed *ex parte*, the Applicant will provide notice to the Discovery Subjects.

---

¶ 50.

[10] In fact, the Clearing House dedicates a page on its website to instructions for subpoenas.  *See* Subpoena Instructions, THE CLEARING HOUSE, https://www.theclearinghouse.org/about/subpoena-instructions.

## CONCLUSION

WHEREFORE, Applicant asks that this Court:

(1) Grant discovery pursuant to 28 U.S.C. § 1782; and

(2) Authorize the issuance of the subpoenas attached to the Declaration of Scott Curtis

Nielson.

Dated:    June 25, 2025
          New York, New York

                                        Respectfully submitted,

                                        /s/  Scott C. Nielson
                                        Scott C. Nielson
                                        snielson@bsfllp.com
                                        E. Martin De Luca
                                        mdeluca@bsfllp.com
                                        Nazly Duarte Gomez*
                                        nduartegomez@bsfllp.com
                                        **Boies Schiller Flexner LLP**
                                        55 Hudson Yards
                                        New York, NY 10001
                                        Tel: (212) 446-2300
                                        Fax: (212) 446-2350

                                        Rossana Baeza*
                                        rbaeza@bsfllp.com
                                        **Boies Schiller Flexner LLP**
                                        100 SE Second Street, Suite 2800
                                        Miami, FL 33131
                                        Tel: (305) 539-8400
                                        Fax: (305) 539-1307

                                        *Application to appear *pro hac vice*
                                        forthcoming

                                        *Attorneys for Applicant*
                                        *State of Peru*

23

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
<u>TYPEFACE REQUIREMENTS, AND TYPESTYLE REQUIREMENTS</u>**

I, Scott Curtis Nielson, counsel for Applicant the State of Peru, certify, pursuant to Southern District of New York Local Rule 7.1, that the foregoing memorandum of law is proportionately spaced, has a typeface of 12 points—except for the text in footnotes which is 10 points as permitted under Local Rule 7.1(b)—and contains 7,723 words, excluding the parts of the document exempted by Local Rule 7.1(c).

Dated:  June 25, 2025

By: <u>/s/ *Scott C. Nielson*    </u>
Scott Curtis Nielson

24